**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CV-23991-RAR**

**DANIEL SYLVAINCE**,

Petitioner,

v.

**WARDEN, MIAMI FEDERAL DETENTION CENTER FDC**, *E.K. Carlton*, *et al*.,

Respondents.
_______________________________________/

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** comes before the Court upon Petitioner Daniel Sylvaince's Verified Petition for Writ of Habeas Corpus and Order to Show Cause within Three Days ("Petition"), [ECF No. 1], filed on June 6, 2026. Petitioner alleges that he has been unlawfully committed to detention and seeks that the Court order his immediate release, or, in the alternative, order an individualized bond hearing before an Immigration Judge. *See* Pet. ¶ 1, Prayer for Relief. The Court having reviewed the Petition,[1] the relevant submissions, and applicable law, it is hereby

**ORDERED AND ADJUDGED** that the Petition, [ECF No. 1], is **GRANTED in part** for the reasons set forth herein.

**BACKGROUND**

Petitioner is a native of Haiti who has resided in the United States since February 2023. Pet. ¶¶ 2, 17. On February 9, 2023, Petitioner sought admission and was paroled into the United States at San Ysidro, California, with authorization to remain in the United States until February

[1] On June 22, 2026, Respondents filed a Response to Petitioner's Habeas Petition ("Response"), [ECF No. 6]. Petitioner subsequently filed a Reply, [ECF No. 7]. Accordingly, the Petition is fully briefed and ripe for review.

8, 2024. Pet. ¶ 2; [ECF No. 1-5]. That same day, the Department of Homeland Security ("DHS") issued a Notice to Appear, charging Petitioner as an immigrant "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act." Pet. ¶ 2; [ECF No. 1-3]. However, Petitioner alleges that DHS never filed this Notice to Appear with the Immigration Court. Pet. ¶ 2.

Petitioner remained in the United States beyond February 8, 2024. Pet. ¶ 3; Resp. at 2. And on August 13, 2025, DHS issued a second Notice to Appear, charging Petitioner under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. Pet. ¶ 2; [ECF No. 1-4]. On September 8, 2025, the second Notice to Appear was filed with the Immigration Court, thereby initiating removal proceedings against Petitioner. Resp. at 2.

On February 7, 2026, Petitioner was arrested by the West Palm Beach Police Department for domestic battery by strangulation under Fla. Stat. § 748.041(2)(a). Pet. ¶ 3; Resp. at 2; [ECF No. 6-4]. Though this case was ultimately dropped, immigration officials were notified of Petitioner's detention, and Petitioner was served a Warrant for Arrest of Alien and transferred into U.S. Immigration and Customs Enforcement ("ICE") custody on March 11, 2026. Pet. ¶ 3; Resp. at 3; [ECF No. 6-6]. Petitioner was detained at the Miami Federal Detention Center, but he was later transferred to the Krome North Service Processing Center in Miami, Florida. Pet. ¶ 4; Resp. at 3; [ECF No. 6-5].

On June 6, 2026, Petitioner filed this action requesting that the Court (1) "[a]ssume jurisdiction over this matter;" (2) "[d]eclare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment and Administrative Procedure Act;" (3) "[i]ssue a Writ of Habeas Corpus ordering Respondents to release Petitioner from custody or in the alternative provide a bond hearing within 7 days pursuant to 8 U.S.C. § 1226(a) at which Respondents must show by

clear and convincing evidence that Petitioner is a flight risk or poses a danger to the community;" and (4) "[i]ssue a declaratory judgment that Petitioner is detained pursuant to 8 U.S.C. § 1226(a), and prohibit denial of bond on the basis that he is detained under 8 U.S.C. § 1225(b)." Pet., Prayer for Relief.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Prieser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Section 2241 authorizes federal courts to hear challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (noting "28 U.S.C. § 2241[ ] confers jurisdiction upon the federal courts to hear" challenges to the "lawfulness of immigration-related detention").

## ANALYSIS

The adjudication of this Petition hinges largely on whether Petitioner is properly detained under § 1225(b)(2) or § 1226(a). Petitioner argues that he is detained under 8 U.S.C. § 1226(a) and is entitled to an individualized bond hearing pursuant to *Hernandez Alvarez v. Warden*, 175 F.4th 1258 (11th Cir. 2026). Pet. ¶¶ 38–58. Conversely, Respondents contend that Petitioner is an "arriving alien" subject to mandatory detention without bond under 8 U.S.C. § 1225(b). Resp. at 3–6. Respondents also argue that Petitioner's due process claim fails because he is detained

pursuant to a valid statutory authority, and Petitioner does not have standing to bring a claim under the Administrative Procedure Act. *Id*. at 6–7.

On May 6, 2026, the Eleventh Circuit published its opinion in *Hernandez Alvarez v. Warden*, concluding that "§ 1225 applies to arriving aliens seeking entry at the border, whereas § 1226 applies to aliens unlawfully in the interior." 175 F.4th 1258, 1276 (11th Cir. 2026). The Eleventh Circuit held that "[t]he text and statutory structure of the INA, bolstered by the long history of detention across our immigration laws and the congressional purpose in passing IIRIRA, yield the conclusion that no-bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here." *Id*. at 1262. And it rejected the contention that "Petitioners' mere presence in the interior transforms them into applicants who are 'seeking admission;' since applicants for admission may withdraw their application by simply leaving the country." *Id*. at 1269. The Court also relied on the Supreme Court's opinion in *Jennings v. Rodriguez*, which "observed that § 1226 'generally governs the process of arresting and detaining' aliens 'present in the country,' including aliens 'who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission.'" *Id*. at 1279 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 288–99 (2018)).

While the Eleventh Circuit's opinion did not specifically address Petitioner's circumstances as an individual initially paroled into the country, the reasoning of *Hernandez Alvarez* is still applicable to Petitioner. Petitioner was detained within the interior of the United States—not at the border. *See id.* at 1286 (recognizing "the longstanding border-interior distinction for purposes of [immigration] detention"). And the record does not reflect that Petitioner was "seeking lawful entry after inspection and authorization by an immigration

officer"—indeed, he was "not applying for entry in any literal sense when [he was] detained." *Id.* at 1269 (internal quotation marks omitted).

Respondents argue that upon the expiration of his parole, Petitioner became subject to mandatory detention pursuant to § 1225(b)(2). Resp. at 3–6. Respondents cite 8 U.S.C. § 1182(d)(5)(A), which authorizes the DHS Secretary to grant a discretionary and temporary "parole into the United States" to any "alien applying for admission to the United States" on "a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). And "when the purposes of such parole . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Respondents then point to a DHS regulation which provides that upon expiration of parole under 8 U.S.C. § 1182(d)(5)(A), a noncitizen "shall be restored to the status that he or she had at the time of parole." Resp. at 4 (citing 8 C.F.R. § 212.5(e)(2)(i)). The Court, however, declines to adopt Respondents' interpretation of § 1182(d)(5)(A).

While Respondents are correct that the expiration of § 1182(d)(5)(A) parole returns the parolee "to the custody from which he was paroled," many courts across the country have consistently held that the expiration of § 1182 parole does not require treating the alien as if he had never been paroled in the first place. *Zaga Tawil v. Cardinal*, No. 26-22521, 2026 WL 2198539, at *5 n.2 (S.D. Fla. July 30, 2026) (collecting cases). Instead, these courts reason that "[s]ection 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." *Rodriguez Valencia v. Noem*, No.

26-cv-00297, 2026 WL 730318, at *5 (M.D. Fla. Mar. 16, 2026) (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302 (E.D.N.Y. 2025)). Accordingly, "based on the border-interior distinction instantiated in § 1225 and § 1226, an alien like Petitioner—who is re-detained in the interior after living in the United States for years—is properly re-detained only under § 1226(a)." *Zaga Tawil*, 2026 WL 2198539, at *5 n.2. This approach is consistent with the *ratio decidendi* of *Hernandez Alvarez*. Thus, the Court finds that § 1226(a) governs Petitioner's detention and Petitioner is entitled to an individualized bond hearing.

To the extent the Petition presents other claims arising under the Administrative Procedure Act and the Due Process Clause, the Court need not reach the merits of those claims. *See, e.g.*, *Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-24535, 2025 WL 2938369, at *6 (S.D. Fla. Oct. 15, 2025). "Should Respondents fail to comply with this Order by providing Petitioner a bond hearing, Petitioner may renew [these claims]." *Id.* (explaining that petitioner's due process claim is not ripe because it is "contingent on Petitioner not receiving a custody determination hearing under 8 U.S.C. section 1226(a)").

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Petitioner Daniel Sylvaince's Verified Petition for Writ of Habeas Corpus and Order to Show Cause within Three Days, [ECF No. 1], is **GRANTED in part**. Respondents shall afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release Petitioner.

2. All deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**.

3. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 31st day of August, 2026.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**